IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JARRITT DESANTO SAMPSON | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. AW-06-521 |
| | | |
| UNKNOWN NAMED DOCTOR | * | |
| CORRECTIONAL MEDICAL SERVICES, | | |
| INC. | * | |
| Defendants. | | |
| | *** | |

## MEMORANDUM

This 42 U.S.C. § 1983 prisoner civil rights action for damages alleges that an unnamed prison physician denied Plaintiff's request to remove a large boil on the back of his neck and instead told Plaintiff to take care of the problem upon his release from confinement.  Paper No. 1.  Plaintiff complains that the boil is causing him great discomfort and "fear of death."  *Id*.

Defendant Correctional Medical Services, Inc.  ("CMS") has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which shall be treated as a motion for summary judgment.  Paper No. 7.  As of the within signature date, Plaintiff has not filed an opposition.  A hearing is not needed to resolve the civil rights claim presented in the matter.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons which follow, the Court shall grant Defendants' Motion.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex*, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility

to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In alleging that he was denied his Eighth Amendment right to necessary medical care Plaintiff must prove two essential elements.  First, he must satisfy the "objective" component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If this first element is satisfied, he must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.  Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

CMS argues that it cannot be held liable based on the principles of vicarious liability, otherwise known as the doctrine of *respondeat superior*.  The court concurs.   To the extent the Complaint attempts to implicate CMS in the alleged denial of care solely upon vicarious liability, the law in this circuit is well established that the doctrine of *respondeat superior* does not apply to

§ 1983 claims.  *See Austin v. Paramount Parks, Inc*., 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

CMS further asserts that Plaintiff received constitutionally adequate medical care. According to the unrefuted exhibits, Plaintiff has an occipital keloid. Paper No. 7, Exs. A & B. Plaintiff first complained about the occipital keloid on August 24, 2005, when he filed a sick-call request stating that his "head bumps" itched. *Id.*  He was examined by Physician's Assistant James Wachter and hydrocortisone cream was ordered. *Id.*  On April 5, 2006, Plaintiff filed a new sick-call request complaining about bleeding "boils" on the back of his neck. *Id.*  Two nurses examined Plaintiff and found no bleeding at that time. *Id.*  On April 18, 2006, Physician's Assistant Elizabeth Beebe wrote an order for Plaintiff to be scheduled for the medical-surgical clinic to evaluate his allegedly painful and bleeding scalp keloid. *Id.*  Plaintiff was examined by Dr. Sadik Ali on May 24, 2006. *Id.* Further assessment for the possible excision of Plaintiff's keloid scar is ongoing. Paper No. 7, Exs. A & B.  According to Dr. Ali, a decision on whether to operate on Plaintiff's scar is complicated by "the fact that excision surgery is not often successful," and that the "excision site frequently becomes infected, thereby creating a significant possibility that the scar will reform and be larger than the original keloid scar." *Id*., Ex. A at Ali Aff.

The Court concludes that Plaintiff has failed to show he was denied necessary care for a serious medical condition.  He has been diagnosed with a keloid scar on his neck;[1] a non-life-threatening skin condition.  Moreover, it does not appear that Plaintiff has been experiencing chronic

---

[1]  According to Dr. Ali, a keloid is an abnormal scar that grows larger that the original size of a skin injury or incision. Paper No. 7, Ex. A at Ali Aff.  It is a raised and ill defined growth of skin in the area of the damaged skin. *Id*.

pain, discomfort, or disfigurement from the keloid.[2]  The uncontroverted record shows that he  filed one sick-call request in August of 2005, complaining of itching from the site, and one sick-call request in April of 2006, complaining of pain, bleeding, and sleeplessness from the keloid.  Further, his sick-call requests regarding the subjective discomfort he experienced from the keloid scar were not ignored.  Undisputed records show that health care personnel, including nurses, physician's assistants, and a staff physician responded to Plaintiff documented sick-call requests. Hydrocortisone cream was prescribed for the itchiness and Plaintiff was referred for further evaluation to respond to the alleged pain and bleeding he was experiencing from the keloid site. Staff continue to evaluate his condition to determine whether surgical removal of the scar is a viable option.

For the aforementioned reasons, Defendant CMS's Motion for Summary Judgment is hereby granted.  Judgment is entered in favor of CMS and against Plaintiff.  The Complaint against the "Unknown Named Doctor" is hereby dismissed.  A separate Order follows.

Date:  July 21, 2006                      _____/s/_____
                                                   Alexander Williams Jr.
                                                   United States District Judge

---

[2]     In *Brock v. Wright*, 315 F.3d 158, 163-167 (2nd Cir. 2003), the Second Circuit concluded that inmate Brock had come forward with sufficient evidence to create a genuine dispute of material fact as to whether his facial keloid, which had developed at the site of a knife wound on his cheek, caused him chronic and substantial pain and affected his day-to-day functions, thus precluding defendants' summary judgment motion on the issue of whether Brock suffered from a serious medical condition.  In the instant case Plaintiff has failed to make such a showing.